UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JENNIFER SERRA,

      Plaintiff,

v.

ORGAN PROCUREMENT
AGENCY OF MICHIGAN,

      Defendant.
_____/

Case No. 2:19-cv-13251

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER DENYING
PLAINTIFF'S PARTIAL MOTION FOR SUMMARY
JUDGMENT [14] AND GRANTING IN PART AND DENYING
IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [15]**

Plaintiff Jennifer Serra filed a complaint against Defendant Organ Procurement Agency of Michigan, doing business as Gift of Life Michigan ("GOLM") and alleged violations of the Americans with Disabilities Act ("ADA") and the Family Medical Leave Act ("FMLA"). ECF 1. After discovery concluded, Plaintiff moved for partial summary judgment, ECF 14, and GOLM also moved for summary judgment, ECF 15. The parties fully briefed both motions. ECF 16, 17, 18, 19. The Court reviewed the briefs and finds that a hearing is unnecessary. *See* E.D. Mich. LR 7.1(f)(2). For the following reasons, the Court will deny Plaintiff's motion and grant in part and deny in part Defendant's motion.

### BACKGROUND

Plaintiff started working for GOLM in March 2012 as a human resources coordinator. ECF 14-2, PgID 86. Plaintiff alleges that she has Attention Deficit

1

Hyperactivity Disorder ("ADHD") and that she suffered a traumatic brain injury that sometimes caused migraines. ECF 1, PgID 2. As a result, she requested FMLA leave for her headaches, ECF 15-2, PgID 206, and GOLM approved the request, ECF 15-19, PgID 287. Because Plaintiff expressed her intention to take FMLA time intermittently when she suffered headaches, GOLM told her that she had to "notify [GOLM] as soon as practicable" when she needed to take leave. ECF 15-19, PgID 287. But even with the FMLA leave, Plaintiff admitted that she was often late for work. ECF 15-2, PgID 205.

In January 2016, GOLM changed its human resource department policies. ECF 15-23, PgID 303. The organization began to require employees to arrive on time to work and not within a fifteen-minute grace period. *Id.* After the new polices began, Plaintiff informed GOLM that she needed disability accommodations. ECF 15-2, PgID 208, ECF 15-24. Among other requests, Plaintiff asked for "[f]lexible scheduling for tardiness" and "[f]lexible use of leave time for personal well-being and work/life balance." ECF 15-24, PgID 304. Plaintiff also informed GOLM that she would "continue to message the HR Manager at the onset of a migraine before the scheduled work time" and that she would inform the HR manager if medication did not help her migraine. *Id.* at 306.

Three months later, Plaintiff provided GOLM a Medical Inquiry Form for a Reasonable Accommodation Request. ECF 15-30. Plaintiff based her inquiry for accommodation on what appears to be symptoms of ADHD and major depression. *Id.* at 317. On the form, Plaintiff's doctor stated that Plaintiff could perform "almost

2

none" of her job functions even "with some restrictions as to magnitude, duration, method, or manner." *Id*. at 318. Plaintiff's doctor also stated that Plaintiff would be "totally restricted" from performing most of her job functions. *Id*.

Even with those limitations, Plaintiff discussed the situation with her supervisors, who then accepted Plaintiff's word that she could perform her job; they also agreed to various accommodations. ECF 15-2, PgID 214; ECF 15-31. But even with the accommodations, Plaintiff admitted that she still struggled with attendance and tardiness. ECF 15-2, PgID 218–19; ECF 15-41 (email sent after Plaintiff's shift began stating that Plaintiff needed to take the day off).

Over time, Plaintiff's migraines persisted, and one day Plaintiff woke up with a migraine but did not tell her manager. ECF 15-2, PgID 224. Instead, she took medication and went back to bed. *Id*. After sleeping a few hours she woke and felt better, so three minutes before she was supposed to start her shift, she messaged her supervisor that she woke up with a migraine but would come into work. *Id*. at 225; ECF 15-46 (text messages). GOLM then terminated Plaintiff due to excessive tardiness. ECF 14-3, PgID 104.

## LEGAL STANDARD

Summary judgment is proper if there is "no genuine dispute as to any material fact" and a party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material for purposes of summary judgment if its resolution would establish or refute an "essential element[] of a cause of action or defense asserted by the

parties[.]" *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (citing *Black's Law Dictionary* 881 (6th ed. 1979)).

The Court views the facts and "draw[s] all reasonable inferences in the light most favorable to the nonmoving party." *Stiles ex rel. D.S. v. Grainger Cty., Tenn.*, 819 F.3d 834, 848 (6th Cir. 2016) (citation omitted). The Court must then determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). And although the Court may not make credibility judgments or weigh the evidence, *Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015), a mere "scintilla" of evidence is insufficient to survive summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff," *Anderson*, 477 U.S. at 252.

## DISCUSSION

Plaintiff asserted an ADA claim and an FMLA claim. *See* ECF 1. GOLM argued that both of her claims lack merit and should be dismissed. ECF 15, PgID 178–88. But Plaintiff maintained that she is entitled to summary judgment on her FMLA claim. ECF 14, PgID 66–73. The Court will address each claim in turn.

I. The FMLA

"The FMLA provides that an eligible employee . . . is entitled to medical leave in the event of 'a serious health condition that makes the employee unable to perform the functions of the position of such employee.'" *Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 553–54 (6th Cir. 2006) (quoting 29 U.S.C. § 2612(a)(1)(D)). There are

two "theories for recovery under the FMLA: (1) the 'entitlement' or 'interference' theory arising from 29 U.S.C. § 2615(a)(1); and (2) the 'retaliation' or 'discrimination' theory arising from 29 U.S.C. § 2615(a)(2)." *Id.* at 555 (internal quotation omitted). Plaintiff asserted only a retaliation/discrimination claim under § 2615(a)(2). ECF 1, PgID 5–6.

To determine whether retaliation has occurred in violation of the FMLA, the Court looks to the burden shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 508 (6th Cir. 2006). The first step under the *McDonnell Douglas* framework gives the Plaintiff the burden of demonstrating a prima facie case of retaliation. *See Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 315 (6th Cir. 2001) (citing *McDonnell Douglas*, 411 U.S. at 802). To demonstrate a prima facie case, Plaintiff must show that:

> (1) she was engaged in activity protected by the FMLA; (2) [GOLM] knew that she was exercising her rights under the FMLA; (3) after learning of [her] exercise of FMLA rights, [GOLM] took an employment action adverse to her; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action.

*Killian*, 454 F.3d at 556 (citation omitted).

If Plaintiff establishes a prima facie case, then the burden shifts to GOLM to articulate a legitimate, non-retaliatory reason for the adverse action. *See Skrjanc*, 272 F.3d at 315 (citing *McDonnell Douglas*, 411 U.S. at 802–04). And if GOLM does so, the burden then shifts back to Plaintiff to demonstrate that the articulated reason is merely a pretext. *See id.* (citing *McDonnell Douglas*, 411 U.S. at 804–06).

Here, there is a clear dispute over whether Plaintiff was engaged in an activity protected by the FMLA—that is, there is a dispute regarding the initial stage of the *McDonnell Douglas* inquiry. Plaintiff claims that she was fired for taking approved intermittent FMLA leave. ECF 14, PgID 67–68. She also argues that she gave adequate notice that she would be late to work when she messaged her supervisor three minutes before her shift began to let the supervisor know that she would be delayed because of a migraine. *Id.* at 69. But Plaintiff admits that if her notice of taking FMLA leave "were deficient, then Plaintiff would not have been engaged in an activity protected by the FMLA because the missed work on February 9, 2018 would not be covered by the [FMLA]." *Id.* at 68; *see also Walton v. Ford Motor Co.*, 424 F.3d 481, 486 (6th Cir. 2005) ("[T]o invoke the protection of the FMLA, an employee must provide notice and a qualifying reason for requesting the leave.") (alterations in original) (quotation omitted).

What is more, Plaintiff argued that she gave notice that she would be taking leave before her shift began, based on GOLM's usual and customary notice requirements. ECF 14, PgID 69 (citing 29 C.F.R. § 825.303(a)) (requiring that the employee "provide notice of leave that is unforeseeable within the time prescribed by the employer's usual and customary notice requirements applicable to such leave."). In response, GOLM argued that Plaintiff did not provide timely notice. ECF 16, PgID 458. GOLM specifically claimed that Plaintiff should have notified GOLM immediately when she woke up with a migraine and that Plaintiff failed to provide notice by failing to notify GOLM. ECF 16, PgID 459–60; ECF 15, PgID 185. But

6

Plaintiff counters the argument with testimony from Plaintiff's supervisor. She argues that the supervisor testified that Plaintiff did comply with the policy when she notified her manager before her shift began. ECF 14-3, PgID 102. Plaintiff's supervisor, however, also testified that the GOLM policy required an employee to notify the human resources manager of the absence or tardiness "in real time." ECF 16-4, PgID 489. And Plaintiff herself testified that she was "supposed to give as much notice as is reasonable and practical[.]" ECF 14-2, PgID 97. In other words, GOLM submits that Plaintiff should have notified GOLM when she knew she would be late: when she initially woke with the headache. ECF 15, PgID 185; ECF 16, PgID 460.

Analysis of the foregoing evidence leads to a finding that the parties dispute what the customary policy was for Plaintiff to notify GOLM of her potential FMLA leave. Because the parties dispute the first *Killian* factor, and thus the first part of the *McDonell Douglas* burden-shifting analysis, the Court cannot grant summary judgment to either party on the FMLA claim.

II.  The ADA

Plaintiff alleged that GOLM violated the ADA by retaliating against her and terminating her employment because of a disability. ECF 1, PgID 6–7.

   *A.  Disability Discrimination*

Plaintiff's disability discrimination claims under the ADA are also evaluated under the *McDonnell Douglas* burden-shifting scheme. *Rosebrough v. Buckeye Valley High Sch.*, 690 F.3d 427, 431 (6th Cir. 2012). Plaintiff again has the initial burden to show that: "(1) [s]he is disabled, (2) [s]he is otherwise qualified to perform the

7

essential functions of a position, with or without accommodation, and (3) [s]he suffered an adverse employment action because of [her] disability." *Demyanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419, 433 (6th Cir. 2014) (citing *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1105 (6th Cir. 2008)). Then, "[i]f the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the challenged employment decision." *Jones v. Potter*, 488 F.3d 397, 404 (6th Cir. 2007) (quotation omitted). If "the employer carr[ies] this burden, then the burden returns to the plaintiff to prove by a preponderance of the evidence that the employer's proffered reason was in fact a pretext design to mask illegal discrimination." *Id.* (citation omitted).

Here, GOLM claims that Plaintiff cannot prove she was qualified to perform her job. ECF 15, PgID 182. According to GOLM, the statement of Plaintiff's doctor that Plaintiff could perform "almost none" of her job functions even with restrictions and that she should be "totally restricted from performing" most of her job functions clearly demonstrate her lack of qualification. ECF 15-30, PgID 318. But Plaintiff claims that she could perform her job with a reasonable accommodation of a modified schedule. And to sustain her claim, Plaintiff need only show that an accommodation is "reasonable on its face." *US Airways, Inc. v. Barnett*, 535 U.S. 391, 401 (2002). Plaintiff cites a GOLM executive's testimony that GOLM could have potentially created a modified work schedule for an employee like the Plaintiff. ECF 17-3, PgID 560. Thus, the Court must find a dispute between the parties over whether Plaintiff was qualified to perform her job with a reasonable accommodation. Accordingly, there

8

is a genuine dispute of material fact about the Plaintiff's ability to establish a prima facie case of discrimination. The Court cannot grant summary judgment on Plaintiff's ADA discrimination claim.

### B. *Retaliation*

An ADA retaliation claim is also analyzed under the *McDonnell Douglas* burden-shifting scheme. The law requires Plaintiff to first prove "that (1) [s]he engaged in protected activity, (2) [GOLM] took an adverse employment action against [her], and (3) there was a causal connection between the protected activity and the adverse employment action." *Thomas v. Lighthouse of Oakland*, No. 12-cv-15494, 2016 WL 2344350, at *12 (E.D. Mich. May 4, 2016) (citing *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 578 (6th Cir. 2000)).

Defendant argues that Plaintiff cannot show a causal connection between taking FMLA leave and being terminated. The Court agrees. Plaintiff first requested FMLA leave in 2016. ECF 15-2, PgID 208, ECF 15-24. But Plaintiff was not terminated for more than two years after the request. *See, e.g.*, *Golden v. Metro. Gov't of Nashville and Davidson Cnty.*, 263 F. Supp. 3d 684, 693 (M.D. Tenn. 2017) (noting that the Sixth Circuit has found a four-month period between the protected activity and termination "insufficient to establish a prima facie case of retaliation") (citing *Cooper v. City of N. Olmsted*, 795 F.2d 1265, 1272–73 (6th Cir. 1986). Additionally, testimony set forth above shows that GOLM terminated Plaintiff because of her tardiness, not because of her disability. *See Harmis v. TRBR, Inc.*, No. 18-cv-11448, 2020 WL 1066096, at *6 (E.D. Mich. Mar. 5, 2020) (Murphy, J.) (finding that a

plaintiff's case fails without a causal connection). There is no evidence of a causal connection between the FMLA request and termination. The Court will therefore grant summary judgment in GOLM's favor on the ADA retaliation claim.

## CONCLUSION AND CASE MANAGEMENT

For the foregoing reasons, the Court will grant in part and deny in part GOLM's motion for summary judgment, ECF 15, and deny Plaintiff's motion for summary judgment, ECF 14. The Court will also require the parties to submit a joint status report no later than February 22, 2021 detailing their willingness to participate in alternative dispute resolution and if so, provide a list of agreed-upon mediators. The parties should keep in mind that the Court will be unable to hold any civil jury trials in the near future due to the COVID-19 pandemic. *See* 20-AO-59. Thus, the parties should also advise the Court of whether they consent to a civil bench trial via videoconferencing technology.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that Plaintiff's motion for partial summary judgment [14] is **DENIED**.

**IT IS FURTHER ORDERED** that GOLM's motion for summary judgment [15] is **GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER ORDERED** that summary judgment is **GRANTED** in GOLM's favor on Plaintiff's ADA retaliation claim.

**IT IS FURTHER ORDERED** that the parties shall **SUBMIT** the above described joint status report no later than **February 22, 2021**.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: February 10, 2021

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on February 10, 2021, by electronic and/or ordinary mail.

s/ David P. Parker
Case Manager